## CAWMAN v. PENNSYLVANIA-READING SEASHORE LINES.

No. 7009.

Circuit Court of Appeals, Third Circuit.

March 27, 1940.

John Henry Reiners, Jr., of Camden, N. J., for appellant.

Alfred E. Driscoll, of Camden, N. J., for appellee.

Before BIGGS, CLARK, and JONES, Circuit Judges.

CLARK, Circuit Judge.

The reluctance underlying the learned district judge's ruling is plain from the record. We can understand that reluctance. On the one hand, plaintiff's intestate, a long time employee of the defendant railroad, is dead, and his death occurred violently while he was in the faithful performance of his duties. On the other hand, the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., remains a hybrid between true workmen's compensation and the strict common law rules. We say hybrid because it retains in full force the requirement of carrier negligence while relaxing the cognate strictness of the defense of contributory negligence and assumption of risk, 45 U.S.C.A. §§ 53, 54.[1] The difference between Federal and State policy is difficult to understand. Its equalization has been recommended by two Presidents. See Message of President Wilson Transmitting the Report of the Employers' Liability and Workmen's Compensation Commission, Sen. Doc. No. 338, 62nd Cong., 2nd Sess.; President Taft, then Chief Justice, Proceedings of the American Law Institute (1929) 42; see also, Robinson, Personal Injury in the Maritime Industry, 44 Harvard Law Review 223, 240. Our own experiences as District Judge suggest the possibility of opposition by a part of the bar.

An objection to the rule of negligence, as a matter of administration rather than of policy, is found in the character of proof. A fact of harm is less debatable than a standard of conduct and so less likely to occasion those differences among reasonable men. Their quantity is illustrated by the "books". The numerous cases are collected in the notes to 45 U.S.C.A. § 51. One such difference is the basis of the District Court's action and this appeal. The learned district judge below felt himself controlled by a case in the United States Supreme Court, Berry v. Baltimore & O. R. Co., Mo.Sup., 43 S.W. 2d 782, certiorari[2] granted, 285 U.S. 532, 52 S.Ct. 407, 76 L.Ed. 927; Baltimore & O. R. Co. v. Berry, 286 U.S. 272, 52 S.Ct. 510, 76 L.Ed. 1098. Following that decision, he took the case from the jury and directed a verdict. Needless to say, it behooves us to carefully compare the case at bar with the authority so deemed binding.

A sifting of what may be called the active facts indicates these resemblances and these differences.

## The Resemblances

Both Berry and Cawman were experienced railroad brakemen. Both men in the course of their duties had frequent occasion to alight from the caboose platform of freight trains. Both trains in the normal operation of the respective railroads were constrained to stop. At the time of the accidents, both cabooses were halted at night on trestles. Their steps projected into space. Both Berry and Cawman fell from these projecting steps to the ground below and were injured.

## The Differences

The Baltimore and Ohio train stopped for a switch to a passing track; the Pennsylvania-Reading train stopped to permit the pass-over of another train. The Baltimore and Ohio train had a hot box; the Pennsylvania-Reading train was in good condition. Berry received a verbal order from his conductor; Cawman acted in compliance with a general rule.

It is apparent that the holding of the High Court precludes attributing any legal significance to these differences. The United States Supreme Court disagreed with the State Supreme Court about the negligence in the conductor's oral and specific "instructions to alight". Here, those instructions are in the form of a general rule (to protect a train by flagging). As general rules, by definition, have no knowl-

[1] For an interesting discussion of the whole doctrine of comparative negligence and the place therein of these similar type statutes, see Mole and Wilson, A Study of Comparative Negligence, 17 Cornell Law Quarterly 333, 604; and see also, Walker, Federal Employers' Liability Act, Comparative Negligence, 1 Virginia Law Register (N.S.) 893; Ford, Negligence and the Employers' Liability Act, 19 Virginia Law Register 811.

[2] Peacock, Purpose of Certiorari in Supreme Court Practice and Effect of Denial or Allowance, 25 American Bar Association Journal 681; Hart Jr., The Business of the Supreme Court at the October Terms, 1937 and 1938, 53 Harvard Law Review 579; Letter from Chief Justice Hughes to Senator Wheeler reprinted in 81 Cong.Rec. 3607 (March 23, 1937); and see also Address to the American Law Institute (1934) 20 American Bar Association Journal 341.

edge of particular circumstances, the matter is a fortiori in the case at bar. The United States Supreme Court agreed with the State Supreme Court about the lack of negligence in the engineer's stopping the train so that the caboose was on the trestle.

The State Supreme Court found against the engineer's negligence on two grounds— his responsibility for calculation anyway, and his lack of knowledge of any necessity therefor (not present here). As to the first, they said: "* * * Granting that the engineer knew about where this open trestle was located, and that stopping with the caboose on the trestle would make it dangerous for any one to alight therefrom at such trestle, yet it would take a rather precise calculation, even if he also knew about the length of his train in number of cars, to figure just where the caboose of a forty-two car train would be standing when the engine was say two car lengths from the switch." Berry v. Baltimore & O. R. Co., Mo.Sup., 43 S.W. 2d 782, 785. The second is a "furthermore" ground and by way of bolstering. The United States Supreme Court's averment: "* * * It held, rightly, that there was no evidence that the petitioner was negligent in stopping the train where it did * * *", Baltimore & O. R. Co. v. Berry, 286 U.S. 272, 274, 52 S.Ct. 510, 511, 76 L.Ed. 1098, gives explicit approval to both. A locomotive engineer is not a surveyor or chargeable with the duties of one.

The, what by way of contrast we may call, passive facts tell another story. The theory of the Berry case is negligence of personnel. There is no mention in either opinion of failure of materiel. In the case at bar, there is such mention and in, so to speak, full bodied terms. The trestle from which the plaintiff's intestate fell was that and nothing more. There was no light, guard rail, or catwalk for the protection of those whose duties might require their physical presence on the nonexistent flooring. We think this omission may constitute a breach of the conceded obligation to provide a safe place to work. The cases are collected in 45 U.S.C.A. § 51, note 289, p. 185, (1939 Supp.) p. 49. That obligation assumes as many forms as there are places to work. The citation of authority, except by way of analogy, is not, therefore, profitable. Plaintiff-appellant calls attention to one such analogy, the telltales before low bridges and tunnels.

Later cases than those in his brief are Davis v. Crane, 8 Cir., 12 F.2d 355, 356; Reading Co. v. Geary, 4 Cir., 47 F.2d 142, 79 A.L.R. 226. There are other pertinent circumstances. See 45 U.S.C.A. § 51, note 305, p. 195, (1939 Supp.) p. 54; note 306, p. 196, (1939 Supp.) p. 54; note 525, p. 291, (1939 Supp.) p. 88. The provision of mechanical safeguards is more simple than the employment of careful employees. Men are more fallible than machines; one lantern or a few boards and a man's life is saved.

The failure or compliance in this aspect was not presented to the United States Supreme Court in Baltimore & O. R. Co. v. Berry, 286 U.S. 272, 52 S.Ct. 510, 76 L.Ed. 1098. We believe it properly for the consideration of a jury and not of a court.

The judgment of the District Court is reversed and a new trial granted.