Ida Nickell, Administrator of Estate of Julian S. Nickell, Deceased, Plaintiff-Appellee, v. The Baltimore and Ohio Railroad Company, Defendant-Appellant.

Term No. 52–F–1.

SCHEINEMAN, J., dissenting.

Opinion filed May 21, 1952.
Rehearing denied July 1, 1952. Released for publication July 1, 1952.

KRAMER, CAMPBELL, COSTELLO & WIECHERT, and JOHN C. ROBERTS, all of East St. Louis, for appellant.

PHILIP G. LISTEMAN, and JAMES H. BANDY, both of East St. Louis, for appellee.

MR. PRESIDING JUSTICE CULBERTSON delivered the opinion of the court.

This is an appeal from a judgment of the circuit court of St. Clair county in favor of Ida Nickell, administrator (hereinafter called plaintiff), as against

the Baltimore & Ohio Railroad Company, a corporation, appellant (hereinafter called defendant), in the sum of $35,000. The action was instituted by plaintiff to recover by reason of the death of plaintiff's intestate, a 53-year-old employee of defendant Railroad, under the Federal Employers' Liability Act. The verdict of the jury was returned in the sum of $50,000. After presentation and argument of motion for judgment notwithstanding the verdict, and motion for a new trial, the trial court required a remittitur of $15,000, and after entry of such remittitur, the motions were overruled and judgment was entered in favor of plaintiff, for $35,000.

The fatal injury to plaintiff's intestate occurred when the deceased was struck by a mail and express train of the defendant Railroad Company, on September 22, 1949, at about 7:00 o'clock in the morning, as he was passing over one of the main tracks of the Railroad Company in the railroad yards in East St. Louis. The plaintiff's intestate was a fireman on switch engines, and also an extra engineer at times. Near the point of the fatal injury an underpass had been constructed on St. Clair avenue, at which point vehicular traffic travelled under the railroad tracks. On either side of St. Clair avenue were passageways designed for pedestrian travel under the tracks. The passageways were reached by means of stairways which extended downward from the surface of St. Clair avenue. There were no other public crossings of the defendant's tracks for a distance of about two or three miles in one direction, and one mile in the other direction. The roundhouse to which plaintiff's intestate was to report before commencing his day's work was situated about 1500 feet north and west of the St. Clair avenue crossing, and the engine on which he was to work that day was standing on a switch track near the roundhouse,

and the engineer was awaiting the arrival of plaintiff's intestate.

The evidence showed that for several years before the fatal injury with which we are concerned in the instant case, the electric lights in the pedestrian passageways under the tracks were broken, leaving the passageways as dark caverns, even in the daytime. The floors of the passageways were covered with human filth and broken glass. There was evidence that the dark tunnels had the odor of a toilet, and were hiding and loafing places for bums and drunks who frequented the taverns and stockyards in the areas near the railroad crossing. There was testimony to the effect that persons would not walk through the passageways alone, day or night, because of these circumstances. There was also evidence that because of the condition of the passageways, employees of defendant Railroad, in going to and returning from work, were compelled to and did cross over the railroad tracks on the west side of St. Clair avenue, and that the constant use by such employees of this means of ingress and egress wore paths in the railroad embankment. This use of the pathways was known to the employees of defendant.

On the particular morning in question plaintiff's intestate came upon the railroad embankment used by employees for crossing the tracks in going to their work. The evidence showed that he signalled a switchman who was standing near a cut of cars which had been stopped on one of the tracks, to hold his train so that he, plaintiff's intestate, could pass over the tracks on his way to the roundhouse. The switchman acknowledged the signal and passed a similar stop signal to the engineer of the train on which he was working, and stood and watched plaintiff's intestate run toward him. When plaintiff's intestate reached the north rail of the north Baltimore & Ohio main

206

track, and was only a few feet from the switchman referred to, the switchman for the first time heard and saw the westbound Baltimore & Ohio train, and it struck plaintiff's intestate almost at the same time. This witness stated that he did not expect any train at all. The train which struck plaintiff's intestate was drifting or coasting at a speed of 35 to 40 miles an hour, and was about 35 minutes behind schedule. With the steam shut off the engine made very little noise, and while there was testimony that a bell was ringing, there was also testimony of other employees on the freight train which was stopped to the effect that they did not hear either a whistle or a bell. The fireman on the train which struck plaintiff's intestate testified that at the time the train was about 700 feet away from plaintiff's intestate, he saw the deceased walking in the direction of the roundhouse, but did not warn the engineer, and when the engine was between 500 to 600 feet from the deceased, the deceased apparently looked in the direction of the train and started to run across the track. The fireman still did not warn the engineer until the engine was about 90 feet from where deceased was struck.

It was stipulated on the trial of the case that the deceased earned an average of $274.88 per month during the last two years and nine months of his life. The Mortality Tables offered in evidence showed that a man of his age had an expectancy of 18.79 years.

Rules of the defendant Railroad Company with respect to whistles, signals, and engineers and firemen, were introduced in evidence, including a rule that employees "will keep off all tracks, except in discharge of duty," and, "before stepping upon or crossing a track they should look in both directions."

On appeal in this court it is the contention of defendant Railroad, that defendant's motion for a directed verdict in its favor, and its motion for judgment

notwithstanding the verdict should have been granted. It is also contended that there was error in permitting the introduction of evidence of rules pleaded by plaintiff, and in the failure to explain the application of the Mortality Tables by an instruction, after the introduction of such tables in evidence. Defendant also contends that the verdict is excessive and shows passion and prejudice, and that there was error in the giving of certain instructions.

Under the facts and the evidence as presented in the record before us, we see no basis for the contention that the court below should have directed a verdict, or allowed the motion for judgment notwithstanding the verdict. The deceased was engaged in the performance of his duties for defendant at the time of his death. One allegation of the complaint was that the defendant had failed to furnish plaintiff's intestate a safe means of ingress to the place of employment or a safe place to work, and also that neglect in the operation of defendant's train caused the plaintiff's intestate to be run down and killed. The circumstance that the passageways under St. Clair avenue were dark, unsanitary, and dangerous, and that employees customarily used the pathway actually used by plaintiff's intestate, imposed a duty on defendant to keep a lookout for employees crossing at such place.

Under the circumstances, questions of contributory negligence of plaintiff's intestate, and of negligence of defendant Railroad Company, were questions of fact for determination by the jury (*Wilkerson v. McCarthy*, 336 U. S. 53, 93 L. Ed. 497, 69 Sup. Ct. 413; *Tennant v. Peoria & P. U. R. Co.*, 321 U. S. 29, 88 L. Ed. 520, 64 Sup. Ct. 409; *Williams v. New York Cent. R. Co.*, 402 Ill. 494). We cannot say under the facts before us that the verdict of the jury was not supported by the evidence and a directed verdict, under the facts in the record, would have been improper

(*Wilkerson v. McCarthy, supra; Lavender v. Kurn,* 327 U. S. 645, 90 L. Ed. 916, 66 Sup. Ct. 740). Once an evidentiary basis has been established for the jury's verdict the court is required to uphold such conclusion, even though such court might draw contrary inferences or feel that another conclusion is more reasonable.

██ Similarly, we find nothing in the evidence to justify setting aside the verdict on the ground that it is so excessive as to indicate passion and prejudice. The amount of damages to be awarded a plaintiff is a question of fact for the jury. Similar awards have been consistently approved (*O'Brien v. Chicago & N. W. Ry. Co.,* 329 Ill. App. 382).

██ Questions were raised on appeal as to the giving of certain instructions with respect to the question of the amount of damages to which plaintiff would be entitled. When the instructions are read as a series and fairly state the law, such instructions have been held to be sufficient, and the omission in one party's instructions may be cured by instructions given for the other party, unless the instruction purports to direct a verdict (*Sprickerhoff v. Baltimore & Ohio R. Co.,* 323 Ill. App. 340, 352; *Cox v. Hrasky,* 318 Ill. App. 287). The instructions in the case, when read as a series, showed clearly that the jury was told to diminish plaintiff's damages if the deceased was guilty of contributory negligence, as clearly as if that specific direction had been contained in another paragraph of an instruction tendered by plaintiff. Another instruction to which objection was taken simply quoted the United States' statutes applicable to cases on the question of assumed risk. The instruction in the language of the statute, under the facts, could not constitute reversible error. (*Deming v. City of Chicago,* 321 Ill. 341, 345.)

██ As to the contention that the court committed reversible error in failing to instruct the jury on the

209

application of the Mortality Tables which had been introduced into evidence, it was apparent under the facts and conclusion of the jury that the jury in fixing the amount of the verdict did not multiply the annual earnings of the deceased by his life expectancy, as shown by the tables. If defendant had desired an instruction on the subject of the application of the Mortality Tables, it was incumbent upon the defendant Railroad to make a request therefor, and it cannot assign as a reversible error, under the facts before us, the failure of the court to instruct on this subject in absence of such request (*Western & Atlantic R. Co. v. Hughes,* 278 U. S. 496, 73 L. Ed. 473, 475, 49 Sup. Ct. 231).

 The operating rules which were offered in evidence by plaintiff, while general in nature, were obviously admissible to negative a charge contained in the answer of defendant to the effect that plaintiff's intestate was guilty of contributory negligence. Defendant actually offered one of its rules in evidence in an effort to show that a violation of such rule by deceased constituted contributory negligence. Reversal would clearly not be justified on the basis of the introduction of such rules, under the facts (*Tennant v. Peoria & P. U. R. Co., supra; Atchison, T. & S. F. Ry. Co. v. Ballard,* 108 F. (2d) 768).

 Two witnesses who were called by plaintiff, after testifying respectively that a bell on the train was ringing at the time it struck the deceased, and to the effect that the two did not know whether the train was late, were each asked by counsel for plaintiff whether in testifying before the coroner one witness had testified that he did not know whether the bell was ringing and the second witness had stated that the train was 20 to 25 minutes late. Both witnesses admitted they had previously so testified, but attempted to reconcile such statements with testimony

which was more favorable to defendant's theory of the case. The matter was not pursued further by counsel for plaintiff, and counsel for plaintiff on appeal in this court states that the only purpose of the examination was to refresh the memory or awaken the conscience of the witness and to cause such witness to speak the truth. There was no effort at impeachment. We believe the court committed no reversible error in permitting such examination (*People v. Michaels,* 335 Ill. 590, 592).

There being no reversible error in the record before us, the judgment will therefore be affirmed.

*Judgment affirmed.*

BARDENS, J., concurs.

SCHEINEMAN, J., dissents.