Charles R. Morton, Plaintiff-Appellee, v. Louisville &
Nashville Railroad Company, Defendant-Appellant.

Term No. 55-O-19.

Fourth District.

February 1, 1956.

Released for publication February 23, 1956.

 

 ██

Baltz & Guymon, of Belleville, for defendant-appellant.

Dan McGlynn, and McGlynn & McGlynn, of East St. Louis, for plaintiff-appellee; Edward J. Murphy, of East St. Louis, of counsel.

PRESIDING JUSTICE BARDENS delivered the opinion of the court.

This suit was instituted for recovery of damages for injuries suffered by the plaintiff when he was knocked from a side ladder near the top of a railroad car during a switching operation. The action is under the Federal Employers' Liability Act. Verdict of $50,000 and judgment thereon in plaintiff's favor were entered on January 10, 1955, before Judge Edward F. Bareis, the trial judge. Thereafter a motion for judgment notwithstanding the verdict and alternative motion for a new trial were filed. Due to the death of Judge Bareis before arguments on the motions, Judge R. W. Griffith heard the arguments and denied the motions.

Plaintiff was employed as an engine foreman in charge of a switching crew in Evansville, Indiana. On November 15, 1952, in the movement of a cut of cars, plaintiff was riding a ladder at the top of one of the cars. There was a pole standing alongside of the track. This pole did not belong to the defendant, but belonged either to a telephone, telegraph or power company. The pole, however, had become bent over at about the level of the top of the railroad cars and was so close to the cars that it struck plaintiff, knocking him to the ground and causing injuries mainly to plaintiff's back and neck.

██ ██ Upon this appeal defendant does not contest liability. Its main contention was error in refusing to

grant a new trial because the verdict is allegedly excessive. In this connection it argues that because the trial judge did not pass upon the post-verdict motions another judge was necessarily limited to the transcript. Therefore this court should consider the questions and gauge them under the standard of preponderance of evidence rather than manifest weight of evidence. With this latter contention we cannot agree. The judgment and orders passing upon the motions were those of the court and not a judge. Regardless of the statute, the courts have held that when a trial judge is unable to hear the post-verdict motions another judge may do so. People v. McConnell, 155 Ill. 192, 40 N. E. 608. See also People v. Ficke, 343 Ill. 367, 175 N. E. 543; Fessler v. Weiss, 348 Ill. App. 21, 107 N.E.2d 795. The only consideration which we would be required to give to the matter would come from the knowledge that the judge who passed upon the motions did not have the benefit of seeing or hearing the witnesses.

In connection with defendant's claim that the verdict is excessive, defendant argues that there is a total failure to prove permanent injury to the plaintiff and that therefore the verdict is so excessive that in and of itself it shows passion and prejudice on behalf of the jury and justifies a new trial. The record shows no misconduct or unwarranted appeal to passion and prejudice and none is claimed.

■ We have held that the question of damages is ordinarily peculiarly one of fact for the jury to determine; Nickell v. Baltimore & O. R. Co., 347 Ill. App. 202, 106 N.E.2d 738; see also Smith v. Illinois Cent. R. Co., 343 Ill. App. 593, 99 N.E.2d 717; and this is especially true where there is conflicting medical evidence; Hannigan v. Elgin, J. & E. R. Co., 337 Ill. App. 538, 86 N.E.2d 388; and in the absence of a specific showing of passion, prejudice or misconduct; Mueth v. Jaska, 302 Ill. App. 289, 23 N.E.2d 805.

In the instant case the plaintiff was 52 years old at the time of the injury. He had only an eighth grade education and his employment for thirty years had been that of a railroad worker. His earnings for the year preceding the injury were $4,889.62. One of the plaintiff's witnesses, Dr. Bihss, testified that plaintiff had a curvature in the upper vertebrae that might or could have resulted from trauma. He also testified to a depression or deformity of the body of the fourth dorsal vertebra and a narrowing of the space occupied by the cartilage, evidencing some injury to the cartilage. Another of the plaintiff's witnesses, Dr. Fritsch, testified to a compression fracture of the third thoracic vertebra and the disc between the third and fourth thoracic vertebrae. He testified that this was a permanent condition; that the plaintiff still has pain in his shoulder and this is a permanent condition. He testified about the limitation of movement in the neck and the prescribing of the wearing of a Thomas Collar by plaintiff under certain conditions to prevent sudden or jerking movement in his neck. He gave as his opinion that the plaintiff could do switching work but that it would be hazardous not only to him but to others. One of defendant's witnesses, Dr. Weber, testified concerning the compression fracture of the fourth dorsal vertebra and in reply to a question about the plaintiff's return to work, stated in substance, "If I were to examine the man to return to work and found he had a compressed fracture of the fourth dorsal vertebra, I would employ him, but not if he had constant pain in his back," and "If he told me that when he turns his neck and he gets weak and gets pain in his back and neck, I would turn him down. I would say it was not safe." The plaintiff testified that his back pains him continually, that it is a dull pain, and that when he has a sudden jerk he has pain for some length of time. He testified about the pain when turning his

477

neck fast or beyond a certain point which was demonstrated to the jury.

There was testimony before the jury about a congenital condition consisting of some cervical ribs and the possible effect of such condition with regard to pain in the neck region and fainting spells. There was also some testimony that the pain and fainting spells could possibly be caused by trauma. The facts concerning the cervical ribs and testimony to the effect that the fainting spells of the plaintiff might not be due to the accident were made clear to the jury by the testimony of Dr. Alderson, testifying for the defendant.

It can thus be seen that there was conflicting testimony and opinions concerning the plaintiff's condition and while no doctor stated that plaintiff would be permanently and totally disabled nor that his condition would not improve, certain disabilities were stated to be permanent and the jury was advised of the progress in recovery made by the plaintiff in the two-year period of time from the accident to the time of the trial. Under the evidence we believe the jury could reasonably conclude that plaintiff had sustained a permanent condition that would result in serious impairment of earning capacity. Taking into account the plaintiff's age, education, and working experience, the loss of wages to the time of trial and the possible loss of future wages, the pain and suffering, it would be difficult for this court to conclude from the size of the verdict alone that it was so excessive as to justify reversal. This is especially true in the absence of any showing of passion, prejudice or misconduct.

Defendant argues a point about error in rejection of evidence, but that point was not preserved by a motion for new trial and is not properly before us. The judgment of the Circuit Court is therefore affirmed.

Judgment affirmed.

CULBERTSON and SCHEINEMAN, JJ., concur.