**Troy Coleman, Plaintiff-Appellee, v. Gulf, Mobile and Ohio Railroad Company, Defendant-Appellant.**

Term No. 58–F–20.

Fourth District.

April 21, 1958.

Released for publication May 7, 1958.

Oehmke, Dunham & Boman, of East St. Louis (Thomas Q. Keefe, of counsel) for defendant-appellant.

Haley & Fredrickson and Meyer & Meyer, of East St. Louis, for plaintiff-appellee.

JUDGE SCHEINEMAN delivered the opinion of the court.

The plaintiff, Troy Coleman, was employed as a conductor by the defendant railroad company, and he received injuries in the course of his employment. He brought this suit under the Federal Employers' Lia-

bility Act and obtained a verdict for $90,000. Defendant's motions for directed verdict, and post-trial motion for judgment, or in the alternative for new trial, were overruled and judgment entered on the verdict. On this appeal defendant contends that the evidence does not show negligence on its part, that the plaintiff was guilty of contributory negligence, that the verdict is against the manifest weight of the evidence, and that the trial court erred in rulings on evidence, and on defendant's motions.

The defendant is charged with negligence in two respects: that it failed to provide a reasonably safe place to work in, since plaintiff was required to cross a trestle on which there was no platform or catwalk; and that the train had been negligently made up, so that a large tank was on a flat car next to the caboose, the tank's end projecting beyond the end of the car, making it likely employees would collide with it while moving.

Plaintiff's evidence indicates that the freight train had been made up under the supervision of defendant's yardmaster, and then placed in charge of plaintiff. It was a way freight which would stop at points on its route for switching purposes, dropping and picking up cars. It was plaintiff's duty to supervise the switching operations, and then make out his written reports of disposition of cars. It was necessary for him to leave the caboose and move forward along the train at such stops.

On the flat car in front of the caboose there had been loaded a large steel tank weighing about 100,000 pounds. There was an empty flat car in front of this car, and the front end of the tank projected over the other car. The tank tapered at the end so that next to the caboose it was about 18 inches in diameter and projected a few inches over the end of the car.

222

On the night of the accident, the train had reached one of its switching points and had come to a stop. All of the train had crossed a certain trestle, except the caboose which was on the trestle. There had formerly been a catwalk at this trestle, which is normally built by substituting a longer than standard tie at intervals, and affixing planks on the projecting ends. This catwalk had been removed some years before, during alterations in the trackage.

The plaintiff was familiar with this situation. Sometimes, when the water was low and it was daylight, plaintiff had crossed by going down below the trestle. Otherwise it was necessary to climb over the cars on the trestle. On this occasion it was dark and, being in December, there was more water in the creek. With the caboose stopped on the trestle at night, plaintiff took his flashlight and went out the front of the caboose to cross onto the next car so he could go forward and alight on the ground. He had his light shining downward so as to see where to step. As he stepped across onto the flatcar, his head bumped the end of the tank, and he blacked out momentarily. When he recovered he was standing on the platform. He went forward and performed his duties, also completed his run. Thereafter he had headaches and pains, so he reported to the company hospital, and received treatment.

Plaintiff had known the tank was there, and had inspected its moorings en route, but states he had not realized the smaller tapered end projected so far to the rear.

As for his medical history, his pain grew steadily worse. He was in the hospital a number of times during the next six months, sometimes in traction, sometimes he wore a Thomas collar; and was examined and treated by various physicians. Finally, his trouble was

diagnosed as a ruptured intervertebral disc, and an operation was advised. This was done during another month's stay in the hospital.

The medical testimony was that he is not capable of working, that his disability is permanent, and that he will continue to suffer pain. His earnings during the year up to the time of his injury in the middle of December, had been $7,277 and he would have received a raise thereafter. At the time of the trial he was 43 years of age. An actuary testified concerning life expectancy and methods of computing the present value of the loss of future earnings.

Upon the factual situation above, the defendant contends there is no evidentiary basis for finding negligence on its part, and that the court erred in admitting improper evidence on the subject. This particularly refers to the company rules. One of the rules stated that certain types of loads should not be placed next to the caboose. The list included such items as lumber, pipe, and "structural steel," such as would project. The list did not mention a steel tank. An experienced railroad man was permitted to testify as an expert, and he gave an opinion that the tank came under the list as structural steel.

■ The rule tended to indicate that the employer knew it was a dangerous practice to place a car with a projecting load adjacent to the caboose, and that accidents of this type were foreseeable in that arrangement. Pertinent company rules are admissible in evidence. Bolle v. Chicago & Northwestern Ry. Co., 258 Ill. App. 545; Nickell v. Baltimore & Ohio R. Co., 347 Ill. App. 202, 210, 106 N.E.2d 738, 742.

The question whether a tank is "structural steel," is not of sufficient importance to be discussed as reversible error. If it is dangerous to have projecting loads next to the caboose, then such a condition is not made safe by failing to mention the specific item in the rule.

224

We also decide there was no variance on this subject, and conclude that the court's rulings were not reversible error.

We have discussed these rulings first, because the facts tend to bring out the question whether there was any evidence of negligence. Defendant argues that the trestle, if of any importance, could only be regarded as a condition, not as a proximate cause; and that the placing of the tank in its position violated no rule, and its position was known to plaintiff, so that the proximate cause of his injury was his own negligence.

 The question of causation can be very difficult under our concept of "proximate cause." But in this case we do not believe that the trestle without a catwalk can be treated as if it were a separate and independent fact. The absence of a catwalk and the improper position of a car with a projecting load occurred together. The absence of the catwalk enlarged the importance of the car next to the caboose. Moreover, in F. E. L. A. cases, the question of causation is for the jury. Pennell v. Baltimore & Ohio R. Co., 13 Ill.App.2d 433, 437.

 The defendant presented evidence that catwalks were constructed by the railroad only at places where the trestle was near a switch. The reason for the distinction is not clear. It could be on the theory that such proximity makes it more likely that trainmen would have to cross the trestle with the train on it. But the evidence also indicates that, with the engine of this train stopped at a regularly used switch point, the rear of the train could be on or beyond the trestle. It had been repeatedly necessary for plaintiff to cross this creek to perform his duties, while the train blocked the trestle.

This court does not rule as a matter of law that the absence of a catwalk, or the arrangement of the train, was negligence. On the other hand, it cannot be

225

said that the conditions leave no possible evidentiary basis for a jury to find negligence. Bailey v. Central Vermont Railway, 319 U. S. 350, 63 Sup. Ct. 1062. Cawman v. Pennsylvania-Reading Seashore Lines, 110 F. 2d 832, cert. denied 311 U. S. 666, 61 Sup. Ct. 24. Therefore, it was not error to submit the case to the jury, and it was proper to deny the motion for judgment notwithstanding the verdict. Lavender v. Kurn, 327 U. S. 645, 90 L. Ed. 916, 66 Sup. Ct. 740.

██ Having found there was an evidentiary basis for the jury to find negligence of the employer, this court has completed its permissible function. Contributory negligence is not a defense, it goes only to the question of amount of damages to be allowed.

 If the trial judge believes the verdict unfair, we assume he still has the power to order a new trial; but the statutory power of this court to review the evidence has been cancelled by the decisions of the United States Supreme Court. In cases under federal law, this court cannot order a new trial because the verdict is contrary to the manifest weight of the evidence, or because the verdict is excessive, and it is useless to appeal on those grounds. We have considered this situation at considerable length in Pennell v. Baltimore & Ohio Ry. Co., 13 Ill.App.2d 433. It will not be repeated here. The situation has been further emphasized in Rogers v. Missouri Pacific Railroad Co., 343 U. S. 500, 77 Sup. Ct. 443. The judgment is affirmed.

Judgment affirmed.

CULBERTSON, P. J. and BARDENS, J., concur.