O'DONNELL v. ELGIN, JOLIET & EASTERN RY. CO.

No. 10390.

United States Court of Appeals Seventh Circuit.

Nov. 6, 1951.

Rehearing Denied Jan. 15, 1952.

Harlan L. Hackbert, Chicago, Ill., Knapp, Cushing, Hershberger & Stevenson, Chicago, Ill., of counsel, for appellant.

350

Joseph D. Ryan, Louis P. Miller, Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and KERNER and DUFFY, Circuit Judges.

MAJOR, Chief Judge.

This action was brought by plaintiff, administratrix of the estate of her deceased husband, under the Federal Employers' Liability Act, 45 U.S.C.A. §§ 51–60, sometimes referred to as the Federal Act. A judgment favorable to the defendant was affirmed by this court. O'Donnell v. Elgin, Joliet & Eastern Ry. Co., 7 Cir., 171 F.2d 973. Upon certiorari, the Supreme Court reversed. 338 U.S. 384, 70 S.Ct. 200, 94 L.Ed. 187.

Following remandment, plaintiff filed an amended complaint. Defendant answered and moved to dismiss (the same motion had theretofore been made to the original complaint and denied) for the following reasons:

"1. It affirmatively appears from the allegations of paragraph 9 of plaintiff's amended complaint that plaintiff is an administratrix appointed by the Probate Court of Lake County, Indiana and as such lacks capacity to maintain an action in this court under section 419 of the Illinois Probate Act (Ill.Rev.Stat., ch. 3, sec. 419) which is made applicable to this action by Rule 17(b) of the rules of Civil Procedure [28 U.S.C.A.].

"2. It affirmatively appears from the allegations of plaintiff's amended complaint that the death of plaintiff's decedent occurred in Lake County, Indiana, under section 6 of the Federal Employers' Liability Act (45 U.S.C.A. sec. 56), the jurisdiction of this court is concurrent with the jurisdiction of the courts of Illinois, and under section 2 of the Illinois Injuries Act (Ill. Rev.Stat., ch. 70, sec. 2) the courts of Illinois have no jurisdiction of this action."

The motion to dismiss was denied and a trial was had, resulting in a verdict and judgment favorable to the plaintiff in the amount of $50,000. Defendant's motion in arrest of judgment for reasons set forth in its motion to dismiss, or in the alternative for a new trial, was denied. The appeal comes to this court from the aforesaid judgment.

The issues here arising from the denial of defendant's motion to dismiss are: (1) whether a non-resident administratrix, appointed in Indiana, has the capacity to sue as a personal representative in a Federal district court sitting in Illinois, and (2) whether a Federal district court so sitting has jurisdiction under the Federal Employers' Liability Act to hear and decide an action for wrongful death which occurred in Indiana. Obviously, if either of these issues be determined adversely to plaintiff, we shall not reach other issues arising from the denial of defendant's motion for a new trial.

Rule 17(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., entitled "Capacity to Sue or Be Sued", provides that such capacity "to sue or be sued shall be determined by the law of the state in which the district court is held * * *." Sec. 419 of the Illinois Probate Act, Ill.Rev.Stat.1951, ch. 3, Sec. 419, provides that a foreign administrator "to whom letters are issued * * * by a court of competent jurisdiction of any state or territory of the United States may sue in this state in any case in which a resident executor, administrator * * * may sue." Sec. 1 of the Illinois Injuries Act, Ill.Rev.Stat.1951, ch. 70, Sec. 1, makes provision for a right of action for death caused by the wrongful act, neglect or default of another. Sec. 2 of the same Act provides, "Every such action shall be brought by and in the names of the personal representatives of such deceased person * * *." This section further provides "that no action shall be brought or prosecuted in this State to recover damages for a death occurring outside of this State where a right of action for such death exists under the laws of the place where such death occurred and service of process in such suit may be had upon the defendant in such place."

Thus, defendant contends that an administrator, under the statutory law of Illinois, whether local or foreign, lacks the capacity to sue in an Illinois court for wrongful death occurring in another state and that, under Rule 17(b), such an administrator

likewise lacks capacity to sue in a Federal district court sitting in Illinois.

In our view, the fallacy of this contention lies in the failure to distinguish between capacity to sue, venue and jurisdiction. This we think is illustrated by the reliance which defendant places upon Walton v. Pryor, 276 Ill. 563, 115 N.E. 2, L.R.A.1918E, 914. There, the action was brought in an Illinois circuit court by a resident administratrix to recover under the Federal Act for the death of her husband, which occurred in the State of Missouri. The Illinois Supreme Court reversed the judgment in plaintiff's favor upon the sole ground that the provision of the Illinois Injuries Act (heretofore quoted) deprived an Illinois court of jurisdiction. The court stated, 276 Ill. at page 570, 115 N.E. at page 5: "It will therefore be seen that the statute of the state provides for an action identical in every particular with the cause of action of which the circuit court assumed jurisdiction, but denies to the court the exercise of such jurisdiction where the death occurs outside of the state."

Further, the motion to dismiss was not made until after trial, but the court held that the issue being jurisdictional could be raised at any time, 276 Ill. at page 565, 115 N.E. at page 3. The fact is that the capacity in which plaintiff brought the action was not an issue and was not mentioned. Of course, if an Illinois court is without jurisdiction to entertain a suit by a local administrator on account of a death which occurred in another State, as was held in the Walton case, it would seem to follow that such a court would be without jurisdiction to entertain a similar action if brought by a foreign administrator. See First National Bank of Chicago v. United Air Lines, 7 Cir., 190 F.2d 493.

But such a result as well as the reasoning therefor are beside the point because Illinois does recognize the capacity of an administrator, both local and foreign, to commence in its courts an action for wrongful death, and jurisdiction is expressly conferred, with the proviso that jurisdiction only is denied where death occurs outside the State. In other words, whether death occurs within or without the State has nothing to do with the capacity of an administrator to sue; it is only determinative of whether the Illinois court is vested with jurisdiction.

Defendant also places much reliance upon a recent opinion of this court, Trust Co. of Chicago v. Pennsylvania R. Co., 183 F.2d 640. True, this court held that the Illinois statute deprived a State court of jurisdiction to entertain a suit for wrongful death occurring outside the State, that the law of the State was binding upon a Federal district court sitting in Illinois in a diversity case and that the latter was likewise without jurisdiction to entertain such an action. Nothing was said in that opinion, however, relative to the capacity in which the suit was brought and its citation in support of defendant's argument on this point is a further illustration of the confusion engendered by failure to differentiate between capacity to sue and jurisdiction.

The distinction which we make between capacity to sue and jurisdiction finds support in the authorities, particularly in cases decided by the judges of the Northern District of Illinois. In Martineau v. Eastern Air Lines, Inc., D.C., 64 F.Supp. 235, 237, the district court (Campbell) in considering the same question stated: "The capacity of a suitor is not the same concept as the jurisdiction of a court. Before the passage of the Injuries Act, an administrator could not sue for wrongful death because there was no right and no remedy, not because he lacked the capacity to sue."

In Waltz v. Chesapeake & O. Ry. Co., D.C., 65 F.Supp. 913, 915, the district court (La Buy) in considering the instant question stated: "The limitation of Section 2 of the Illinois Injuries Act, when linked to Section 419 of the Illinois Probate Act, results in the conclusion that a foreign administrator may not sue in Illinois courts for death occurring outside of the state of Illinois. But Section 2 of the Injuries Act is not directed to the capacity of the parties to sue. Its purpose is to limit the jurisdiction of the Illinois courts. If the proviso of Section 2 limiting jurisdiction was nonexistent, an administrator could sue in Illinois and Illinois courts would have jurisdiction over this class of cases."

This court, in Scott v. New York, C. & St. L. R. Co., 159 F.2d 618, had before it a situation wherein suits had been brought under the Federal Act in a Federal court by an administrator appointed in Illinois where the decedent's death occurred in Indiana. In the meantime, a similar suit had been instituted by an Indiana administrator in a court of that State. While the capacity in which suit was brought by the Illinois administrator was not raised, so far as the opinion discloses, the court reasoned that the suit might properly be maintained by either administrator. The court (opinion by Judge, now Justice, Minton) stated, 159 F.2d at page 619: "Since personal representatives were regularly appointed in both Illinois and Indiana to enforce the cause of action, they each had a right to sue thereon, but the action in which judgment was first reached became *res judicata* as to the other. Since the judgment was first recovered in Indiana, that judgment was *res judicata* as to the action in Illinois which had not yet reached and never did reach judgment."

On the application of Rule 17(b), see also Cooper v. American Airlines, Inc., 2 Cir., 149 F.2d 355, 357, 162 A.L.R. 318, and Briggs v. Pennsylvania R. Co., 2 Cir., 153 F.2d 841, 842, 163 A.L.R. 1281.

Plaintiff argues that Rule 17(b), if applied as defendant would have us do, is in conflict with the Federal Act and not controlling. We need not resolve this argument inasmuch as we do not agree with defendant's contention as to the applicability of the rule.

In view of what we have said, it is our conclusion that Illinois, both by its statute and its courts, recognizes the capacity of a duly appointed administrator, whether domestic or foreign, to sue in its courts. And we might add that defendant, attempting by its motion to raise the issue of the capacity of the administratrix in the instant suit, raised only the issue of the jurisdiction of an Illinois court and consequently of the Federal court to entertain an action otherwise properly instituted.

Defendant's jurisdictional issue rests upon Sec. 6 of the Federal Act, 45 U.S.C.A. §

56, which provides: "The jurisdiction of the courts of the United States under this chapter shall be concurrent with that of the courts of the several States * * *."

It is argued that Congress having conferred "concurrent" jurisdiction, a Federal district court sitting in Illinois is deprived of jurisdiction because the jurisdiction of Illinois courts has been denied by the law of that State. No case is cited which supports this argument, and we think it is without merit.

Defendant relies upon diversity cases, typical of which is the decision of this court in Trust Co. of Chicago v. Pennsylvania R. Co., supra [183 F.2d 643], heretofore discussed, wherein the right asserted is granted or denied by the State. In such cases a Federal court is bound by State law; it is " 'in effect, only another court of the State * * *.' " Angel v. Bullington, 330 U.S. 183, 192, 67 S.Ct. 657, 91 L.Ed. 832; Woods v. Interstate Realty Co., 337 U.S. 535, 538, 69 S.Ct. 1235, 93 L.Ed. 1524. But it is different where the action, as in the instant case, is predicated upon a Federal right. As stated in Angel v. Bullington, 330 U.S. at page 192, 67 S.Ct. at page 662, 91 L.Ed. 832: "Of course, where resort is had to a federal court not on grounds of diversity of citizenship but because a federal right is claimed, the limitations upon the courts of a State do not control a federal court sitting in the State."

In discussing the 1910 amendment to Sec. 6, with reference to its legislative history, the court in Miles v. Illinois Central Railroad Co., 315 U.S. 698, 703, 62 S.Ct. 827, 830, 86 L.Ed. 1129, stated: "Words were simultaneously adopted recognizing the jurisdiction of the state courts by providing that the federal jurisdiction should be concurrent. The venue of state court suits was left to the practice of the forum. The opportunity to present causes of action arising under the F. E. L. A. in the state courts came, however, not from the state law but from the federal."

And in Bailey v. Central Vermont Railway, Inc., 319 U.S. 350, 352, 63 S.Ct. 1062, 1063, 87 L.Ed. 1444, the court stated: "The rights which the Act creates are federal

rights protected by federal rather than local rules of law."

It is not open to doubt but that Congress by the Federal Act expressly conferred jurisdiction and venue upon Federal courts, Baltimore and Ohio R. Co. v. Kepner, 314 U.S. 44, 50–52, 62 S.Ct. 6, 86 L.Ed. 28, and that by use of the word "concurrent" it conferred equal jurisdiction upon State courts, subject, however, to the right of the State to limit in a non-discriminatory way such jurisdiction. Referring to the provision under discussion (amendment of 1910), the court in Second Employers' Liability Cases, (Mondou v. New York, N. H. & H. R. Co.) 223 U.S. 1, 56, 32 S.Ct. 169, 178, 56 L.Ed. 327, stated: " * * * we deem it well to observe that there is not here involved any attempt by Congress to enlarge or regulate the jurisdiction of state courts, or to control or affect their modes of procedure, but only a question of the duty of such a court, when its ordinary jurisdiction, as prescribed by local laws, is appropriate to the occasion, and is invoked in conformity with those laws, to take cognizance of an action to enforce a right of civil recovery arising under the act of Congress, and susceptible of adjudication according to the prevailing rules of procedure."

This language was quoted with approval in Herb v. Pitcairn, 324 U.S. 117, 120, 65 S.Ct. 459, 461, 89 L.Ed. 789, and the court on the same page quoted from Douglas v. New York, N. H. & H. R. Co., 279 U.S. 377, 387, 49 S.Ct. 355, 73 L.Ed. 747: " 'As to the grant of jurisdiction in the Employers' Liability Act, that statute does not purport to require State Courts to entertain suits arising under it but only to empower them to do so, so far as the authority of the United States is concerned. * * * But there is nothing in the Act of Congress that purports to force a duty upon such Courts as against an otherwise valid excuse.' "

In Missouri ex rel. Southern Railway Co. v. Mayfield, 340 U.S. 1, 4, 71 S.Ct. 1, 3, 95 L.Ed. 3, the court recognized the power of a State to deny in a non-discriminatory manner access to its courts to persons seeking recovery under the Federal Act, and stated: "No such restriction is imposed upon the States merely because the Employers' Liability Act empowers their courts to entertain suits arising under it."

█ It is plain, of course, that Congress conferred jurisdiction both upon the Federal and State courts to entertain suits for the vindication of rights established by the Federal Act, but it is also plain from the authorities cited and discussed that Congress did not by use of the word "concurrent" make the jurisdiction of either dependent upon the other. The jurisdiction of the Federal courts is mandatory in the sense that such a court is without discretion to disclaim it in a case where a plaintiff has brought himself within the terms of the Federal Act. On the other hand, the jurisdiction of a State court may be embraced or rejected, it is permissive in nature, depending upon the law of the State, providing, of course, that such law rests upon a non-discriminatory basis. Defendant's contention, if accepted, would produce the incongruous result that a State by closing the doors of its courts to an action brought under the Federal Act could *ipso facto* also close the doors of a Federal court to such an action.

The issues raised on account of the denial of defendant's motion for a new trial relate to (1) the court's refusal to permit the defendant to impeach plaintiff's witness, Jack O'Donnell (brother of the deceased), by showing that his testimony given in the instant trial was different from that given in the former, and (2) the giving of certain instructions and the failure to give others.

The facts of the case are set forth in considerable detail in our former opinion, 171 F.2d 973, and need not be repeated here. It appears material, however, to note that reversal by the Supreme Court, 338 U.S. 384, 70 S.Ct. 200, 94 L.Ed. 187, was based upon its construction of the Safety Appliance Act, 45 U.S.C.A. § 2, and the narrow issue which remained for trial upon remandment. The court stated, 338 U.S. at page 394, 70 S.Ct. at page 206: "As to the claim based on the Safety Appliance Act, we hold that the plaintiff was entitled to a peremptory instruction that to equip a car with a coupler which broke in the switching operation was a violation of the Act, which rendered defendant liable for injuries prox-

imately resulting therefrom, and that neither evidence of negligence nor of diligence and care was to be considered on the question of this liability."

■ Thus, the sole issue before the jury on the question of liability was whether the admitted failure of the coupler to operate was the proximate cause of decedent's death, and a study of the record is convincing that the jury could hardly have been expected to do otherwise than decide this narrow issue adversely to the defendant.

■ No good purpose could be served in entering a detailed discussion relative to defendant's contention that the court committed grievous error in its refusal to permit the so-called impeachment of plaintiff's witness, Jack O'Donnell, by showing that his testimony at this trial varied from that given on the previous trial. It is sufficient to state that we have examined the record and agree that the court unduly restricted the cross-examination of this witness. However, the variance between his testimony as given at the two trials is so slight that we cannot believe it was of any serious consequence. If error, it was harmless.

We come now to the instructions, given and refused, which the defendant urges as reversible error. Defendant requested the court to charge the jury as follows: "You are instructed in estimating the present cash value of any future loss of earnings, you should also consider the fact that all persons do not live to the age of expectancy, and this is particularly true in the case of hazardous occupations such as that of a railroad switchman; that they may not work during all the years of their life; that their earnings may not remain stationary and that the reasonably to be expected earnings may vary or diminish in the future."

The court refused to give the instruction as requested, but gave it in a modified form as follows: "In estimating the present cash value of any future loss of earnings, you may also consider the fact that all persons do not necessarily live to the age of expectancy and that some persons live beyond the age of expectancy; that they may not work during all the years of their life; that their earnings may not remain stationary and that the reasonably to be expected earnings may vary and either diminish or increase in the future."

Defendant argues that the refusal to give the instruction as requested is reversible error, relying upon Thompson v. Camp, 6 Cir., 163 F.2d 396. It is true that the instruction as proffered was part of an instruction the refusal of which was held to be reversible error in that case. However, the giving or refusal of this instruction was held to be within the discretion of the court in Louisville & N. R. Co. v. Botts, 8 Cir., 173 F.2d 164. In commenting thereon, the court stated, 173 F.2d at page 170: "That all persons do not live to the age of normal expectancy, especially in hazardous occupations, and that they may not work all their lives, or their earnings may otherwise terminate or diminish, are such commonplace facts, of daily consciousness, that they do not need to be made a matter of judicial fiat. If appellant believed that some reminder of them was necessary, they clearly were sufficiently emphasizable, for this purpose, in argument to the jury, as appellant in fact did."

■ We agree with the latter court. The instruction as proposed is argumentative and, besides, it tells the jury only that which every person of good sense knows. It would be just as informative for the court to instruct the jury that some people live longer than others, that a person exposed to danger is not as likely to live as long as one who is not and that some people retire but of those who do not some may receive an increase and others a decrease in wages. And we wonder if it could be possible that any jury would not know that a railroad switchman is engaged in a hazardous occupation? The instruction as modified and given is also subject to the criticism that it is argumentative, but it at least has the virtue of presenting both sides of the argument. Certainly there was no error in the giving of this instruction, particularly in view of that which was requested by the defendant.

■ Complaint is made because of the failure to instruct the jury as to the standard or formula by which to determine the

present cash value of future loss of earnings. Here, as in Wetherbee v. Elgin, Joliet & Eastern Ry. Co., 7 Cir., 191 F.2d 302, the defendant did not suggest to the court a rule by which to determine such present cash value and, under the circumstances, we hold as we did in that case, at page 311, that failure so to do is not reversible error.

■ The most serious criticism of the court's charge was its failure to limit recovery on behalf of the children for support during their minority. The court's charge authorized the jury to consider "the pecuniary loss, if any, which you may find from the evidence that the widow and children have sustained because of being deprived of maintenance and support," and "the contribution of money or other pecuniary benefits, if any, which the evidence may show that the surviving widow and children would have received from him after the time of his death, if he had continued to live." The court overruled defendant's objection to the instruction on damage because it was not limited to the amount "allocable to the children, for their support which they would be entitled to during their minority." The failure of the court to instruct in this respect was a part of the rejected instruction to which we have heretofore referred and the refusal of which the court held to be reversible error in Thompson v. Camp, 6 Cir., 163 F.2d 396. We think that the refusal of the court to thus limit recovery on behalf of the children was error. Whether it was such prejudicial error as to require a reversal is the problem.

■ The decedent at the time of his death was 45 years of age and left his widow and four children, ages respectively 20, 15, 7 and 6. Decedent's annual gross earnings during the three years prior to his death ranged from $3300 to $3600. The verdict was for $50,000, but we do not agree with defendant's contention that the error in the court's charge was "clearly prejudicial" and "a major factor which resulted in this unusually large verdict." While the size of the verdict is not to be minimized, yet we think when evaluated in conformity with present day conditions and when compared with verdicts in similar cases, it was reasonable. In fact, it is difficult when all the circumstances of the case are considered, even though the jury had been meticulously instructed, to discern how the defendant could or would have fared any better.

This case has been in the courts for a long time, and it is our view and we so conclude that the errors complained of were not of such prejudicial nature as to require reversal for another trial.

The judgment appealed from is Affirmed.