Wayne Harsh, Plaintiff-Appellee, v. Illinois Terminal Railroad Company, Defendant-Appellant.

Term No. 53-F-12.

Opinion filed August 17, 1953. Rehearing denied October 28, 1953. Released for publication October 29, 1953.

FRED P. SCHUMAN, of Granite City, and BURROUGHS, SIMPSON & BURROUGHS, of Edwardsville, for appellant; HAROLD G. TALLEY, of Alton, of counsel.

MORRIS B. CHAPMAN, of Granite City, for appellee.

MR. PRESIDING JUSTICE BARDENS delivered the opinion of the court.

Plaintiff filed his complaint in the circuit court of Madison county alleging a violation by defendant of the Federal Boiler Inspection Act and personal injury resulting therefrom. Defendant's motions for a

directed verdict at the close of plaintiff's evidence and at the close of all the evidence were overruled and the jury returned a verdict in the sum of $12,000 upon which judgment was entered. Defendant's motions for judgment n. o. v. and for a new trial were likewise overruled and this appeal followed.

Defendant operates an electric interurban line from Alton, Illinois, to St. Louis, Missouri. Trolley poles connect with an overhead power line in the normal fashion and are retracted automatically to a horizontal position on top of the car if the pole should slip off the power line. The mechanism by which the pole is thus retracted is called a "retriever" and its alleged failure to operate properly is the basis of plaintiff's action. The retriever is an intricate device composed of powerful springs that are wound and set as the trolley-pole rope is pulled out to put the pole in contact with the power line. Then if contact with the power line is broken and the rope suddenly jerked by the trolley springing free, the retriever is activated and causes the rope to be automatically and quickly rewound into the retriever, bringing the pole down to the top of the car. A retriever is located at both ends of the trolley car to control the trolley pole at that end. To "set" a retriever requires a careful pulling of the trolley rope out of the retriever until the retriever springs are fully wound and a catch takes hold, keeping the springs tightly wound. Any jerk of the line as the trolley is then allowed to ascend to make contact with the power line, or a failure of the catch to hold the spring tension, will result in the line being quickly and powerfully rewound.

On April 25, 1950, plaintiff was the conductor on the first car of a three-car train pulling into the St. Louis depot two to four minutes late. As the cars crossed a switch, the rear trolley on plaintiff's car jumped the

track and he climbed out to reset it. Plaintiff testified that he pulled out the rope in the usual fashion and set the retriever; then with the tension from the retriever springs off the rope, he permitted it to slide slowly through his hands to bring the pole into contact with the power line; that suddenly the retriever operated, jerking the plaintiff between the two cars, injuring his back.

Plaintiff alleges that the retriever was defective and that the defendant's failure to keep the said retriever in a safe condition for his use constituted a violation of the Federal Boiler Inspection Act (45 USCA, sec. 23). This paragraph is part of the Safety Appliance and Equipment Act and reads as follows:

"It shall be unlawful for any carrier to use or permit to be used on its line any locomotive unless said locomotive, its boiler, tender, and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such carrier without unnecessary peril to life or limb, and unless said locomotive, its boiler, tender, and all parts and appurtenances thereof have been inspected from time to time in accordance with the provisions of sections 28, 29, 30, and 32 of this title and are able to withstand such test or tests as may be prescribed in the rules and regulations hereinafter provided for."

 This paragraph has been frequently construed and clearly imposes an absolute liability on the railroad for injuries to employees proximately caused by defective equipment. The liability under paragraph 23 is not based on negligence and the railroad will therefore not be excused by a showing of care on its part or contributory negligence on the employee's part. A continuing, absolute duty to maintain equipment in a safe condition puts the railroad in the position of

an insurer for injuries falling in this category. *Moore v. Chesapeake & Ohio R. R. Co.*, 291 U. S. 205; *Williams v. N. Y. Central Ry. Co.*, 402 Ill. 494, 84 N. E. (2d) 399.

The defendant's several motions raise the legal sufficiency of the plaintiff's evidence, standing alone, of proof of violation of section 23, of proof of defectiveness of the retriever in question proximately causing plaintiff's injuries, and the weight of said evidence when considered in the light of all the evidence. The evidence shows that a retriever in perfect condition retrieves with a jerk when the trolley pole becomes disengaged from the power line; that is its normal function. It is also clear that considerable care is required or the retriever may be caused to retrieve as the rope is played out to raise the pole to the line. Various witnesses, including plaintiff, testified that it happened frequently in the process of resetting trolley poles.

██ Plaintiff's evidence does not include any affirmative, specific evidence of a defect in the retriever in question. It does, however, negate any fault or mishandling of the retriever by plaintiff and, therefore, argues inferentially that plaintiff's testimony of the happening of the incident evidences a defect in the mechanism. In addition to plaintiff's own testimony, a mechanical engineer testified on his behalf that in his opinion a retriever which retrieved under the circumstances described by plaintiff was defective in certain specific details. In testing this evidence under the issues raised by defendant's motion for a directed verdict we are bound to consider it, and reasonable inferences leading therefrom, as true. This does not mean that in any case the existence of necessary evidentiary facts can be argued wholly by evidence of the occurrence of an event, or that a forceful presumption or inference of fact is a sufficient substitute for evi-

277

dence of said fact. However, in the instant case, the issue of liability turns upon the existence of a defect in a mechanism to which the parties did not have equal access. Plaintiff's evidence of the incident created an inference of such a defect. In our view, the burden was properly on defendant to refute this inference by producing the allegedly defective retriever in court or presenting specific evidence as to its operating condition at the time in question. This it did not do. In the absence of such specific rebuttal, plaintiff's evidence taken as true has sufficient probative force to require the issues to be submitted to a jury. *Robson v. Pennsylvania R. Co.*, 337 Ill. App. 557, 86 N. E. (2d) 403.

■■■ Defendant further contends that the verdict of the jury finding a violation of the Boiler Inspection Act is contrary to the manifest weight of the evidence. In general, it may be said that plaintiff's evidence of injury resulting from the allegedly defective retriever was contradicted in many particulars, but these contradictions went to the point of plaintiff's credibility and were resolved by the jury in his favor. However, with respect to the existence of the alleged defect, certain undisputed facts were established by the evidence. Plaintiff himself testified that before the run back to Alton was started, he saw the motorman set the pole that plaintiff had left in the retrieved position under the hook on top of the car, and that he presumed the retriever was reset at that time. Further, on the cross-examination of the mechanical engineer who gave opinion evidence on plaintiff's behalf as to possible defects in the retriever which would cause it to retrieve unexpectedly, it was stated that these same defects would prevent the retriever from operating normally at all. Yet the evidence shows that the retriever operated normally before and after the

278

incident complained of. In order for the retriever to have retrieved the trolley pole when it jumped the line going to the depot, it must have been in good working order; again, when the motorman reset the retriever and placed the pole on the hook before the return trip to Alton, the retriever operated normally. These facts, to be gathered from plaintiff's evidence, in our view, appear more favorable to the defendant than to the plaintiff. The evidence further showed that what happened to plaintiff on this occasion had happened to him and to others from time to time without the retriever having been defective. The burden rested on plaintiff to show that on this occasion a defect existed and that it proximately caused his injury. With respect to the alleged defect, it is clear from all the evidence that this burden of proof was not satisfied. The inference of a defect arising from plaintiff's circumstantial evidence is manifestly outweighed by the showing that the retriever worked normally before and after the incident and by the other evidence in the record. It is, therefore, our conclusion from all the evidence that the jury finding of a violation of the Boiler Inspection Act is clearly against the manifest weight of the evidence. *Robertson v. Louisville & N. R. Co.*, 327 Ill. App. 44, 63 N. E. (2d) 608.

██ Since this matter must be remanded to the trial court for a new trial because the jury's finding of a violation of the Boiler Inspection Act is manifestly against the weight of the evidence, we need not discuss in full other grounds of defendant's contention that it is entitled to a new trial. As a guide on the retrial of this cause, however, we might say that defendant's argument that the trial court erred in permitting plaintiff's expert to testify on the ground that his testimony was based on an experiment is without merit. The expert's testimony concerning the opera-

tion and mechanism of a retriever based on his disassembling of another retriever was designed to inform the jury of the workings of this intricate mechanism and give foundation to his opinion evidence. On the basis of his knowledge gained from disassembling a retriever, he gave his opinion as to what defect might have caused the retriever in question to operate in the fashion described by plaintiff. The significance of this foundation evidence lay not in the physical facts described, but in the opinions and conclusions based thereon. Therefore, the evidence was not in the nature of an experiment and the dissimilarity of conditions at the time of injury and at the time of the witness's disassembling of the retriever did not render his testimony incompetent.

██ ██ Another error urged by defendant was that the trial court erred in denying defendant's motion praying for an order requiring plaintiff to submit himself for physical examination, as provided by Rule 35 of the Federal Rules. In order to sustain such motion, it must necessarily be concluded that a federal rule of practice extends to a case based on a federal statute arising in a state court since the law of Illinois denies such right of physical examination. *Chicago, R. I. & P. Ry. Co. v. Benson,* 352 Ill. 195, 185 N. E. 244. Rule 1 of the Federal Rules of Civil Procedure limits the scope of said rules to "procedure in the district courts of the United States." The granting to state courts of concurrent jurisdiction in F. E. L. A. cases does not require that a federal rule supplant the procedural law of a State. It must, therefore, be concluded under the rule enunciated by the Illinois Supreme Court that a plaintiff cannot be required to submit to a physical examination in a matter pending in our state courts even though the matter arises under a federal statute.

**Finally,** defendant urges that the giving of an instruction on behalf of plaintiff and the refusal to give an instruction on defendant's behalf constituted error. Defendant's offered instruction was: "The Court instructs the jury that the mere happening of the alleged occurrence raises no presumption of the violation of the section of the statute in question."

This type of instruction has often been criticized as misleading and confusing though it correctly states the law. *West Chicago St. R. Co. v. Petters,* 196 Ill. 298; *Elmore v. Cummings,* 321 Ill. App. 234, 52 N. E. (2d) 827. Its fault lies in the fact that a series of similar instructions could isolate every element of a plaintiff's case and conclude that, standing alone, that element could not support a recovery. Each such instruction would be correct; but a clearer and fairer presentation of the law for the jury lies in an affirmative statement of what a plaintiff is required to prove to recover. The trial court correctly refused such instruction. Nor do we find any error in the giving of plaintiff's instruction referring to "the defective condition, as aforesaid," of the retriever without setting forth specifically the alleged defect. The jury heard the instructions as a series and were capable of remembering that the "as aforesaid" referred to a prior allegation of defectiveness and not to an established or recited defect. We have previously stated that plaintiff was required to prove a defect in the retriever. We see no necessity that such defect be described specifically in the complaint or an instruction.

**For** the reasons specified, the cause is reversed and remanded for a new trial.

*Reversed and remanded for a new trial.*

SCHEINEMAN and CULBERTSON concur.

[See next page.]

281

SUPPLEMENT TO OPINION ON DENIAL OF PETITION
FOR REHEARING

On petition for rehearing plaintiff contests, for the first time, the power of a reviewing court to consider the weight of the evidence in F. E. L. A. cases and to reverse and remand a judgment as against the manifest weight of the evidence. It is contended that once such court determines that there is sufficient evidence in the record to support submitting the issues to a jury, it has exhausted its function with respect to weighing the judgment against the evidence. Numerous cases are cited and relied upon, principally, *Lavender v. Kurn,* 327 U. S. 645, 90 L. Ed. 916, 66 S. Ct. 740; *Ellis v. Union Pacific R. Co.,* 329 U. S. 649, 91 L. Ed. 572, 67 S. Ct. 598; *Tennant v. Peoria & Pekin Union Railway Co.,* 321 U. S. 29, 88 L. Ed. 520, 64 S. Ct. 409; *Williams v. New York Cent. R. Co.,* 402 Ill. 494, 84 N. E. (2d) 399; *Nickell v. Baltimore & O. R. Co.,* 347 Ill. App. 202, 106 N. E. (2d) 738. All of these cases deal with the questions of directed verdicts or judgments notwithstanding the verdicts and not with the reversal and remandment on the ground of a verdict against the manifest weight of evidence.

Standing alone, language from these opinions appears to lend force to plaintiff's argument. However, considering each case in its entirety, it becomes apparent that they do not support plaintiff's position. In virtually all of them the reviewing court does in fact carefully detail and consider the evidence. Where it was felt the trial court or a reviewing court weighed conflicting evidence, or considered inferences as true which a jury had already rejected, the lower court's action in taking the case from the jury was disapproved.

The opinion of the court in the case at bar notes the fact that the evidence of an incident occurring and in-

jury therefrom was highly contradicted but that these issues relate to the credibility of witnesses and were decided by the jury in plaintiff's favor. Such finding, therefore, was not disturbed. On the issue of the existence of a defective appliance, this court did not weigh conflicting evidence, consider the credibility of the various witnesses, nor follow what it considered a more reasonable inference. It considered only undisputed facts and circumstances. These facts were not susceptible of varying inferences but constituted a manifest weight of evidence in opposition to the claim of a defective or unsafe retriever.

 Plaintiff has cited no authority, and we find none, which removes the reviewing court's historical power to reverse and remand a case for new trial when it believes the verdict to be against the manifest weight of the evidence. The cases cited do illustrate the reluctance of the reviewing courts to disturb findings on issues that are based on credibility of witnesses. We find in these authorities, however, no such restrictive rule of law as urged by plaintiff.

*Petition for rehearing denied.*

SCHEINEMAN, P. J. and CULBERTSON, J., concur.