Delores Pennell, as Administrator of Estate of Anial A. Pennell, Deceased, Plaintiff-Appellee, v. Baltimore and Ohio Railroad Company, Defendant-Appellant.

Term No. 56–O–9.

Fourth District.

January 28, 1957.

Rehearing denied May 28, 1957.

Supplemental Opinion May 28, 1957.

Released for publication May 28, 1957.

434

Kramer, Campbell, Costello & Wiechert, of East St. Louis, for defendant-appellant; Edwin H. Burgess, and Kenneth H. Ekin, of counsel.

Dan McGlynn, McGlynn & McGlynn, of East St. Louis, for plaintiff-appellee; Edward J. Murphy, of counsel.

Floyd E. Thompson, Albert E. Jenner, Jr., Harlan L. Hackbert, and Thomas P. Sullivan Amici Curiae.

JUDGE BARDENS delivered the opinion of the court.

Defendant appeals from a judgment of the City Court of East St. Louis entered on a jury's verdict in the amount of $150,000 in a death case brought under the Federal Safety Appliance and Equipment Act, 45

U. S. C. A., Chapter 1. The complaint was in two counts, the verdict resting on Count II, which charged that the railroad cars of defendant involved in this accident were not equipped with couplers, operating automatically on impact. Defendant urges that the trial court erred in denying its motions for a directed verdict, its motion for judgment notwithstanding the verdict and the alternative motion for a new trial. The latter motion raises issues relating to the weight of the evidence, the size of the verdict, arguments of counsel, the giving of certain instructions and rulings on the admissibility of certain evidence.

Plaintiff's intestate was foreman of a switching crew and was killed in the course of switching operations on July 21, 1955. We do not deem it necessary to fully detail the circumstances of such incident. It suffices to say that decedent ran to a car that had failed to couple and was attempting to set the hand brake to keep it from rolling back into the path of another car that had been kicked down the track by the engine. He was unsuccessful and was instantly killed when caught between the two cars as they cornered. The evidence established that decedent was 37 years old at the time of his death and left surviving his widow and a seven year old son. His earnings, including miscellaneous income, as well as railroad pay, in 1955, aggregated $2,615.95 for the six and three-quarters months. Further elaboration of the evidence will be made in discussing the issues involving such evidence.

The familiar issue raised by defendant's motions for a directed verdict and for judgment notwithstanding the verdict is whether there is a total failure of proof of any necessary element in plaintiff's case. Bonnier v. C. B. & Q. R. R. Co., 2 Ill.2d 606, 119 N.E.2d 254. Under the Safety Appliance and Equipment Act, 45 U. S. C. A., Chapter 1, the duty of the railroad is, of course, absolute, and liability exists

apart from actual negligence of defendant. Affolder v. New York, C. & St. L. R. Co., 339 U. S. 96, 70 S. Ct. 509. Defendant urges, however, that the failure of the couplers to function automatically was not the proximate cause of decedent's death but only furnished a condition which resulted in tragedy because decedent voluntarily left a place of safety to climb on the runaway car. We find no merit in such contention. Were defendant's employees to weigh every action in terms of possible personal injury, defendant's business would virtually halt. Decedent's reaction to the emergency created by the failure of the couplers to operate automatically was certainly that which might be expected of a responsible railroad employee. The fine line between "condition" and "cause" urged by defendant in this case cannot be drawn as a matter of law. And, under recent U. S. Supreme Court decisions in railroad cases, it is clear that given an evidentiary basis in the record, the jury's verdict is decisive of any issue resting on causal connection. Lavender v. Kurn, 327 U. S. 645, 66 S. Ct. 740. We find ample support for submitting the issue of causation to a jury and for the verdict on such issue. New York C. and St. L. R. R. Co. v. Affolder, 174 F.2d 486, Adams v. Chicago & Erie Ry. Co., 314 Ill. App. 404, 416, 41 N.E.2d 991.

The limited scope of review in railroad cases as set forth in the Lavender case, supra, is likewise determinative of any issue turning on the weight of the evidence, Harsh v. Illinois Terminal R. Co., 351 Ill. App. 272, 114 N.E.2d 901, rev. 348 U. S. 940, reh. den. 348 U. S. 977.

Defendant's main contention is that the verdict is manifestly excessive, which issue the trial court considered in denying defendant's motion for a new trial. We must now determine whether such ruling by the trial judge constituted an abuse of discretion. We observe that the jury arrived at the figure of $150,000

without the aïd of any actuarial evidence concerning life expectancy or present value of future earnings. In the briefs, however, the verdict is defended and attacked on actuarial grounds. In support of the verdict, plaintiff points out that decedent earned $5,816.75 in 1953; that railroad men were given a 10 per cent pay raise in December, 1955, and that, therefore, the jury might have considered plaintiff's probable pecuniary loss to be approximately $5,918.42, taking into consideration the $480 retained by decedent for his personal use. Then plaintiff argues, using 2½ per cent as the discount rate and 33 years as the life expectancy, the sum of $131,924.06 would be required to produce $5,918.42 for 33 years. The difference between this figure and $150,000 is attributed to the intangible element of the pecuniary value of the loss of decedent's care and guidance in rearing the minor son. Allendorf v. Elgin, Joliet & E. Ry. Co., 8 Ill.2d 164, 179. On the other hand defendant points out that decedent was 37 years old and had a life expectancy of 31.3 years (average of four tables); his earnings from all sources for six and three-quarters months to date of death totalled $2,615.95; and that decedent admittedly retained $480 per year from his earnings for personal expenses. The actual pecuniary loss to plaintiff from these figures would appear to be approximately $5,200, giving no consideration to the portion of such sum attributable to decedent's share of living expenses. It is then pointed out that $150,000 invested at 3 per cent would yield $4,500 annually, and leave the principal sum undisturbed, or would produce 31 annual payments of approximately $7,500 before the principal is exhausted. It is also argued that plaintiff's pecuniary loss in fact is more nearly $3,000 or $3,500, annually, giving consideration to decedent's share of living expenses; that the present cash value of $3,000 and $3,500 annually,

at 3 per cent interest, over 31 years is $60,001.20 and $70,001.40, respectively.

■ ■ These figures and defendant's other arithmetical analyses of the verdict give substantial support to its argument that it is excessive even though other factors, such as loss of decedent's guidance and care in rearing of the minor son, and his handiness as a workman around the house would be proper items to consider in arriving at an over-all pecuniary loss figure. Allendorf v. Elgin, Joliet & E. Ry. Co., 8 Ill.2d 164, 179. However, it follows from the U. S. Supreme Court's determination that appellate courts have no power to review the weight of the evidence in railroad cases, that the power to review the size of the verdict is likewise so limited. To consider this issue would necessarily require reviewing the weight of the evidence since it is obvious there is an evidentiary basis for a substantial verdict. The recent case of Southern Railway Company v. Neese, 350 U. S. 77, 100 L. Ed. 60, lends support to this view. In that case, the Court of Appeals determined in a carefully considered and actuarially supported opinion that the verdict was excessive. The Supreme Court, in a per curiam opinion, simply concluded that the record supported the jury's verdict and reversed the Court of Appeals. While there was no clarifying discussion of the scope of review of the issue of excessiveness of the verdict in intermediate appellate courts, the result reached indicates the view of the Supreme Court on such issue. In addition, our examination of the cases reaching the U. S. Supreme Court touching on the issue of excessiveness of the verdict reveals no objective criteria against which an intermediate appellate court might weigh the exercise of discretion by the trial court in handling such issue. Nor has the Congress defined the outer limits of recovery in such cases. Therefore, in the light of the

■■■■■■■■■■

Harsh case, and in the absence of any approved standards or criteria by which a verdict may be adjudged either reasonable or excessive or so large as to indicate prejudice of the jury, this court cannot determine the trial court's treatment of this issue to be erroneous.

■ Various other errors are urged by defendant. The introduction in evidence of decedent's photograph was related to the issue of his earning ability as a part-time musical entertainer. Though its materiality is certainly very tenuous and the possibility of its prejudicial effect apparent, its admission rested in the discretion of the trial judge and there is insufficient indication of an abuse of such discretion to warrant a reversal on such ground.

■ We find no reversible error in the giving of the several instructions complained of by defendant, and will comment only briefly on them. An instruction in the language of the statute has specifically been approved in F. E. L. A. and Safety Appliance Cases, Howard v. B. & O. C. Terminal R. Co., 327 Ill. App. 83, 63 N.E.2d 774, Fritz v. Penn. R. Co., 185 F.2d 31 and is particularly appropriate in a case such as this where the issues are simple. The two instructions complained of as repetitious do contain certain common elements and overlapping language. However, in essence, we feel the distinction is an appropriate one between explaining what constitutes proof of failure to couple automatically and the legal effect of such failure. The next instruction complained of informed the jury that the measure of damages was the "present cash value of future pecuniary benefits" but did not explain the phrase "present cash value" or provide a method of making such computation. The authorities agree, however, that the burden is on defendant to supply any definitions or formulae which it feels desirable or necessary to explain the phrase "present value." Wetherbee

■■■■■■■■■■■■■

v. Elgin, Joliet & E. Ry. Co., 191 F.2d 302, O'Donnell v. Elgin, Joliet & E. Ry. Co., 193 F.2d 348, Louisville & Nashville R. R. Co. v. Holloway, 246 U. S. 525, 62 L. Ed. 867. The final instruction complained of succinctly pointed out that contributory negligence is no defense under the Safety Appliance Act. Defendant urges that such instructions should cover the proximate cause issue. Since the instruction was limited to the one matter of contributory negligence and was not peremptory, we do not feel there is merit to defendant's contention.

■■■■ Finally, defendant urges that the trial court erred in allowing improper and prejudicial argument to the jury by plaintiff. The alleged impropriety centers around plaintiff's counsel talking about life expectancy and work expectancy in connection with his argument on damages when, as defendant alleges, no evidence had been offered on these points. We have carefully considered this matter since the case is unusual in its total lack of statistical and actuarial proof. Plaintiff was content to submit its case without the traditional evidentiary aids usually employed by plaintiffs' counsel in these cases. But it does not follow, as defendant contends, that the jury, therefore, had insufficient evidence on which to base its estimate of damages. Proof was made as to decedent's age, health, earnings, habits, and other factors upon which damages for pecuniary loss could be based. Actuarial testimony and mortality tables are not the only evidence of life expectancy. Such evidence is, of course, helpful to the jury in reducing the items of damages to monetary figures, but it is not a prerequisite to the establishment of a plaintiff's case. Bunch v. Padva, 333 Ill. App. 24, 76 N.E.2d 544. And, of course, defendant was equally entitled to make use of such evidence if it deemed it necessary to a fair consideration of the issue of dam-

°ages. We therefore find no reversible error in the argument of plaintiff's counsel in this connection.

The judgment of the trial court is therefore affirmed.

Judgment affirmed.

SCHEINEMAN, P. J. and CULBERTSON, J., concur.

### Supplemental Opinion on Denial of Petition for Rehearing

The defendant has filed a petition for rehearing and we have allowed the intervention of Amici Curiae for the purpose of filing the brief in support of the petition for rehearing. The principal contention on rehearing and the only contention that we will consider in this additional opinion concerns our holding in the main opinion to the effect that this Court has not the power to disturb verdicts in Federal Employers Liability Act cases on the ground that the verdicts are against the manifest weight of the evidence, provided there is found to be an evidentiary basis of a submissible case for consideration by the jury.

In this connection we feel it may be helpful to review the case on which we relied, namely, Harsh v. Illinois Terminal Railroad Company, 348 U. S. 940, 99 L. Ed. 736, which resulted in the reversal of our judgment reported in 351 Ill. App. 272. It will be noted that we found that the plaintiff, Harsh, had made out a submissible case to the jury and we then found that the verdict of the jury was against the manifest weight of the evidence and reversed and remanded the case for new trial. Thereafter, petition for rehearing was filed and for the first time the plaintiff questioned our power to consider weight of evidence in Federal Employers Liability Act cases. We then appended a supplemental opinion shown at page 282 and 283 holding

that a traditional right of procedure in Illinois governing cases of this type gave us the right to pass upon manifest weight and distinguished the cases cited by the plaintiff on the ground that the cited cases pertained to directed verdicts or judgments entered notwithstanding verdicts. One of the cases cited was Lavender v. Kurn, 327 U. S. 645, 90 L. Ed. 916, 66 S. Ct. 740. We denied the petition for rehearing. Thereafter the plaintiff filed his affidavit in compliance with the provisions of 2(C) of Paragraph 75 of the Practice Act, waived his right to a new trial, and asked that the remanding order be stricken. In pursuance to this petition and affidavit, the remanding order was stricken. Leave to appeal was denied by the Supreme Court of Illinois, but Writ of Certiorari was granted by the Supreme Court of the United States and resulted in reversal in a per curiam opinion which reads as follows: "Judgment Reversed. Lavender vs. Kurn, 327 U. S. 645, 90 L. Ed. 916, 66 S. Ct. 740."

Amici Curiae contends that the most that can be said for the Harsh decision is that the U. S. Supreme Court disagreed with our conclusion. The citation of Lavender v. Kurn showed that the Supreme Court of the United States treated our power to reverse and remand for a new trial as against the manifest weight of the evidence the same as a directed verdict where there is sufficient evidence to make out a submissible case to the jury. The Supreme Court of the United States used the following language in deciding Lavender v. Kurn: "Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court

443

might draw a contrary inference or feel that another conclusion is more reasonable."

Under the above holding we concluded that the decision of the Supreme Court of the United States in the Harsh case clearly denied the right to this Court to follow Illinois procedure and grant new trials on the basis that the verdict was against the manifest weight of the evidence. If this result provides "one brand of justice for one group of defendants and another brand for other groups," as contended by counsel, we can only reply that we are following the dictates of an upper court and the result is not our responsibility.

For these reasons the petition for rehearing is denied.

CULBERTSON, P. J. and SCHEINEMAN, J., concur.