BAILES, Judge.
This is a suit for damages arising from alleged violations of the Equal Credit Opportunity Act which is found in Sections 1691 et seq. of Title 15 of the United States Code.
The plaintiff alleges that City National Bank of Baton Rouge, Louisiana, and James B. Quinn, an officer and branch manager of the bank, discriminated against her because of her sex and marital status and that they violated certain provisions of the Equal Credit Opportunity Act by discouraging her from applying for credit with the bank and by failing to provide her with specific reasons why her alleged application for credit was denied. Actual and punitive damages and attorney’s fees are sought as a result of those actions.
On June 30, 1977, the plaintiff decided to purchase a 1975 Chevrolet El Camino truck which she had seen on a used car lot. That afternoon, she went to the Government Street branch of City National Bank with her son and her brother-in-law to attempt to borrow $2,000.00, which was the full purchase price of the vehicle.
Upon arriving at the bank, she spoke with the manager, Quinn, who did not know her personally. Her husband, however, was well known to him because he had been a customer there on previous occasions and had an excellent credit reputation with that bank.
*893 The conversation that ensued between Quinn and Mrs. Thames is a matter of considerable disagreement. In summary, the plaintiff states that she attempted to borrow the money necessary to make her purchase but that she was discouraged from doing so by Quinn without reason and that he discriminated against her because he would have no credit dealings with her on her own application unless her husband concurred.
Quinn related, however, that he evaluated her oral application and felt that he could not accept it at that time because of her inadequate income and because she did not have a sufficient down payment. He denied that he required her husband’s signature on any loan that she made, but he did indicate to her that it would be necessary for her to have someone act as an endorser for her.
Having been offended by the actions of Quinn, Mrs. Thames subsequently visited the main office of the bank and expressed her complaints to two bank officers, Merle Alexander and Daniel R. Brown. At that time, Brown gave her a loan application form and requested that she submit it for consideration. This was never done.
On July 7, 1977, she wrote a letter to Quinn in which she requested that she be given written reasons as to why her application was not accepted. On July 14, Brown responded to her on behalf of the bank by letter. That letter states in pertinent part:
“Thank you for your letter of July 7 to Mr. James B. Quinn in which you ask for the reasons for denial of your application for credit on June 30.
After discussing this matter with Mr. Quinn we are of the opinion that he, as a result of his long time business relationship with you and your husband, handled the transaction in the routine manner in which your previous credit requests were handled.
We are anxious to receive an application from you for this particular request and enclose a form for completion. Please return this to me at your earliest convenience, either by mail or in person. I assure you that your application will receive our immediate attention and complete consideration. We regret any inconvenience that you might have been caused.
If you have any further questions regarding this matter please let us hear from you.”
No further action transpired between the parties until this suit was filed on September 8, 1977. The case was thereafter tried to a jury and verdicts were returned in favor of both defendants on all issues. We find no reversible error in those judgments.
The appellant contends that the action of the trial court should be modified in two respects. First, it is maintained that a directed verdict should be ordered in its favor because of the failure of the bank to give satisfactory written reasons for refusing to immediately make the loan. Next, it is argued that the jury instructions as to punitive damages were inadequate. During the course of the trial, the court granted the defendants’ motion for a directed verdict as to the plaintiff’s claim that she was discouraged by Quinn and the bank from making a credit application. The appellant does not complain of that ruling here.
The scope of review by a state appellate court of a jury verdict under the Equal Credit Opportunity Act seems to be a matter of first impression here. In Trahan v. Gulf Crews, Inc., 260 La. 29, 255 So.2d 63 (1971), the court stated:
“In reaching its decision the appellate court properly recognized that its review of the jury verdict in suits under the general maritime law as expanded by the Jones Act is, necessarily, the same as that of the federal courts. Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916; Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493; McAllister v. Magnolia Petroleum Co., 357 U.S. 221, 78 S.Ct. 1201, 2 L.Ed.2d 1272; and Macomber v. De Bardeleben Coal Co., Inc., 200 La. 633, 8 So.2d 624. The defendants do not dispute this.
*894 “Accordingly, although Louisiana appellate courts have the constitutional authority to review both the law and the facts of a case, they may not, under federal law and jurisprudence, disturb the finding of a trial jury on the merits in such cases unless there is no reasonable basis for the jury’s conclusion the death or injury resulted from the negligence of the defendant-employer. Rogers v. Missouri Pacific R. Co., supra; Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, 369 U.S. 355, 82 S.Ct. 780, 7 L.Ed.2d 798; and Lavender v. Kurn, supra.”
This is not a case under the general maritime law and the issue as to our function is not without some doubt. See 46 Tulane Law Review 992. However, in light of the well settled federal precedent against the substitution of other views for that of the trier of fact, we conclude that we are bound to review this jury decision as a federal appellate court would. Bowman v. Illinois Central Railroad Company, 11 Ill.2d 186, 142 N.E.2d 104 (1957); Pennell v. Baltimore & Ohio Railroad Company, 13 Ill. App.2d 433, 142 N.E.2d 497 (1957); Wright, Law of Federal Courts, 3rd Ed. 193; 73 Harv.L.Rev. 1551.
Several provisions of the Equal Credit Opportunity Act are directly applicable here.
“§ 1691. (a) It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction—
(1) on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to contract);
(2) because all or part of the applicant’s income derives from any public assistance program; or
(3) because the applicant has in good faith exercised any right under this chapter. * * * * * *
“(d)(1) Within thirty days (or such longer reasonable time as specified in regulations of the Board for any class of credit transaction) after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application.
(2) Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor. A creditor satisfies this obligation by—
(A) providing statements of reasons in writing as a matter of course to applicants against whom adverse action is taken; or
(B) giving written notification of adverse action which discloses (i) the applicant’s right to a statement of reasons within thirty days after receipt by the creditor of a request made within sixty days after such notification, and (ii) the identity of the person or office from which such statement may be obtained. Such statement may be given orally if the written notification advises the applicant of his right to have the statement of reasons confirmed in writing on written request.
(3) A statement of reasons meets the requirements of this section only if it contains the specific reasons for the adverse action taken. * * * * * *
(6) For purposes of this subsection, the term “adverse action” means a denial or revocation of credit, a change in the terms of ah existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested. Such term does not include a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default, or where such additional credit would exceed a previously established credit limit.”
Whether the bank would be liable under the theory that it failed to give satisfactory written reasons for its actions involves other interrelated factual issues to be resolved by the trier of fact and if any of them were decided adversely to the plaintiff, there would be no necessity for the *895 jury to go further. The first inquiry for the jury would be whether an application was, in fact, made. If it concluded that there was an application, it would then become necessary for it to decide if the application was denied. Finally, if the application was denied, were the written reasons given by the defendant unsatisfactory under the law.
The record contains considerable factual conflict concerning each of these issues and sufficient facts are present to decide in either party’s favor. The jury was also instructed on the law as to each issue. We do not know how the jury resolved those issues but, as noted in Tennant v. Peoria & P. U. R Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520, the court stated:
“ * * * ‘The very essence of (the jury’s) function from among conflicting inferences and conclusions that which it considers most reasonable.’ And, in the Ellerman case, supra, the court emphasized that neither it ‘nor the Court of Appeals can redetermine facts found by the jury any more than the District Court can predetermine them.’ ”
And in Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916, the court also said:
“ * * * ‘It is no answer to say that the jury’s verdict involved speculation and conjecture. * * * Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where * * there is an evidentiary basis for the jury’s verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court’s function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable.’ ”
Since there is sufficient evidence for the jury to decide either for the plaintiff or for the defendants, this judgment will not be disturbed. We are not at liberty to substitute our own opinion of those facts for those of the jury.
Counsel for the appellant argues strenuously that the case of Carroll v. Exxon Co., U. S. A., 434 F.Supp. 557 (E.D.La.1977) is decisive in appellant’s favor of the question as to whether the reasons furnished by the bank for the supposed denial of credit were adequate. For the reasons previously stated herein, that decision need not be considered here because we do not know whether the jury found it necessary to reach that question in its deliberations.
The appellant’s final contention is that the trial judge inadequately defined and instructed the jury as to punitive damages. That issue is moot and no longer material, however, in view of the jury’s finding for all defendants and our judgment here. Debose v. Trapani, 295 So.2d 72 (La.App., 4th Cir. 1974). Here the jury rejected liability of defendant and the issue of punitive damages was not reached.
For the foregoing reasons, the judgment appealed is affirmed at appellant’s cost.
AFFIRMED.